IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLES ORSENO,**<br>        **Plaintiff,** | **CIVIL ACTION** |
| v. | |
| **EAGLEVILLE HOSPITAL,**<br>        **Defendant.** | **NO.  25CV4372** |

## MEMORANDUM OPINION

Plaintiff Charles Orseno ("Orseno") has sued his former employer, Defendant Eagleville Hospital ("Eagleville") for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, *et seq*. and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101 *et seq*., as well as for retaliation in violation of the Family & Medical Leave Act (FMLA), 29 U.S.C. § 2615.  Eagleville has filed a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss each of these counts.[1] Fed. R. Civ. P. 12(b)(6).

In the alternative, Eagleville moves to bracket Orseno's timeframe of recovery pursuant to the FLSA, 29 U.S.C. § 207(a), and PMWA, 43 P.S. § 333.101 *et seq*.

### I.    FACTUAL BACKGROUND

The following allegations are taken from Orseno's Complaint and are taken as true on a motion to dismiss.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Orseno was employed by Eagleville as an Infrastructure Manager for approximately ten years.  He alleges that throughout his time with Eagleville, he was "expected" to be on-call "24/7, including evenings and weekends" which led to him "routinely" working more than forty

---

[1] Defendant's Motion to Dismiss made no arguments regarding Orseno's third claim, unjust enrichment.  That claim therefore endures.

1

hours per week. But he says he was never compensated for any of this overtime work.

From February 2024 to late-June 2024, Orseno acted as *de facto* head of the IT department. Sometime during this span, he applied for a formal promotion to the head of IT, but did not get the job. Instead, Eagleville hired one James Flood, an external candidate, to head the IT department.

In the "middle" of June 2024, Orseno applied for FMLA intermittent medical leave to care for his father, which Eagleville granted. Orseno used FMLA leave to take his father to at least one doctor's appointment. Orseno further alleges that Flood demanded that provide three-day's notice before taking any FMLA-protected leave, despite the absence of such a requirement in Eagleton's employee handbook or other written policies.

## II.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 210-11.

### III.  DISCUSSION

#### A. FLSA and PMWA

##### i. *Sufficiency of Pleadings*

Under the FLSA, employers are required to "pay their employees at least a specified minimum hourly wage for work performed . . . and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week." *De Ascencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003).  Similarly, under the PMWA, employers are required to "pay employees at least the minimum wage specified in the FLSA and no less than one and one-half times their regular wage for hours worked over forty per week." *McKinney v. Chester Cty.*, 2021 WL 409975, at *3 (E.D. Pa. Feb. 5, 2021).  "Because of the similarities between the PMWA and the FLSA, Pennsylvania courts analyze overtime and minimum wage violations of the PMWA and the FLSA under the same framework." *Bansept v. G&M Auto.*, 434 F. Supp.3d 253, 258 (E.D. Pa. 2020).

Plaintiffs claiming unpaid overtime must "connect the dots" between typical patterns of work and assertions of work "completed outside of regularly scheduled shifts." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 n. 7 (3d Cir. 2014).  *Abington* addressed a series of parallel cases in which plaintiffs alleged that multiple hospital groups were violating the FLSA and PMWA by failing to account for work done while off-duty. *Id.* at 239, 241.  Plaintiffs argued that they "typically" worked between 32-40 hours per week, "frequently" working extra hours during meal periods, after hours, and during the twenty hours of mandatory continuing education coursework. *Id.* at 242.  Plaintiffs surmised that "[b]ecause they typically worked full time, or very close to it, and also worked several hours of unpaid overtime work each week," it was "plausible" that at least some of the uncompensated work was performed after the

3

contractual forty hours. *Id.* (internal quotes omitted).

The Third Circuit did not buy it, ruling that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a *given* work week *as well as* some uncompensated time in excess of the [forty] hours." *Id.* at 241-42 (emphasis in original) (quoting *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). It reasoned that discussing "typical" or "frequent" work patterns, alone, are not enough to support a claim. *Id.* Plaintiffs must demonstrate a week of forty working hours along with extra, unpaid hours of labor *during* that week. While plaintiffs are not required to identify exact dates or times of uncompensated overtime, *id.* at 243, they could plausibly state an FMLA claim with allegations that they "typically worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours [they] worked during one or more of *those* forty-hour weeks." *Id.* (emphasis in original) (internal quotes omitted).

From its face, the Complaint satisfies each *Abington* criterion. Taking them each in turn, *Abington* requires (1) sufficiently pleading a pattern or specific instance of forty hours worked; (2) extra work beyond the normal or specific forty hours; (3) that the extra work occurred during a forty-hour work week; and, (4) the absence of compensation for that extra work. *Abington*, 765 F.3d at 242-43. Orseno notes that he was "employed full-time" by Eagleville; "expected to be on-call 24/7, including evenings and weekends;" "regularly" responded to after-hours calls; and "routinely" worked over 40 hours per week as a result of these after-hours calls. And he alleges that he was not compensated for this after-hours work. Unlike the plaintiffs in *Abington*, who failed to show that uncompensated work was beyond their full-time work hours, Orseno offers enough to support plausible inference that he: (1) regularly worked forty hour work weeks;

4

(2) performed extra work after hours, beyond those forty hours; (3) "routinely" exceeded forty hours of work from these extra tasks; and, (4) was not compensated for this overtime labor.

Therefore, viewed in the light most favorable to Orseno, the Complaint plausibly alleges that Eagleville failed to pay Orseno at the proper one and one-half rate required by the FLSA and PMWA. Defendant's Motion to Dismiss will therefore be denied on this ground.

### ii.    *Period of Recovery*

Eagleville next argues that the statute of limitations bars Orseno from recovering in unpaid overtime accrued prior to July 1, 2022.

The usual period of recovery on FLSA claims is two years. 29 U.S.C. § 255(a); *see also Sida v. Pintura Constr. LLC*, 2018 WL 6258604, at *4 (W.D. Pa. Nov. 30, 2018) (citing 29 U.S.C. §2559(a)). However, upon showing that an employer's failure to pay overtime was willful, the period of recovery is extended to three years. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-33 (1988). "A violation is willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Id.* at 133. Willful violations are those "which are intentional, knowing or voluntary as distinguished from accidental, and is used to characterize conduct marked by careless disregard; good faith is not a defense to willful violation." *Bailey v. Pilots' Ass'n for Bay and River Delaware*, 406 F.Supp. 1302, 1308 (E.D. Pa. 1976).

Under the PMWA, the statute of limitations is always three years calculated from the date plaintiff-employee last performed overtime work, without any need to show willfulness. *Gonzalez v. Bustleton Servs. Inc.*, 2010 WL 1813487, at *6 (E.D. Pa. Mar. 5, 2010); *see also Caucci v. Prison Health Services, Inc.*, 153 F. Supp.2d 605, 610 (E.D. Pa. 2001).

Here, Orseno's request for ten years of back wages exceeds the three years of recovery

permitted under the PMWA. Orseno left Eagleville's employ on or about October 25, 2024, filing his Complaint in state court on July 1, 2025. At the moment Orseno filed his complaint, he could, at most, seek to recover unpaid overtime dating back to the pay period encompassing July 1, 2022. Since the PMWA always offers a statute of limitations of three years, Orseno may levy PMWA claims on unpaid overtime on the pay periods encompassing July 1, 2022, until October 25, 2024.

The next operative question is whether the Complaint offers enough information to reasonably infer Eagleville acted willfully, thereby entitling Orseno to recover, not two, but three years of overtime pay under the FLSA. It does not. An employer acts willfully if they "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin,* 486 U.S. at 133 (1988). The Third Circuit has also adopted "evident indifference" as a third flavor of willfulness. *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296 (3d Cir. 1991) (holding an employer's "evident indifference" to whether a payment system violated the FLSA constituted willful conduct.); *see also Stone v. Troy Const., LLC*, 935 F.3d 141, 149 n. 10 (3d Cir. 2019) (citing *Selker Bros.*, 949 F.2d at 1296). Courts often conduct this inquiry as a unified whole, rather than differentiating between knowing, reckless, or indifferent conduct. *See, e.g.*, *Solis v. A-1 Mortg. Corp.*, 934 F. Supp.2d 778, 810-11 (W.D. Pa. 2013) (holding defendant's violations of the FLSA were willful based on prior warning prior instructions to employees to falsify pay records; a history of past FLSA violations; and a consent judgment requiring compliance with the FLSA); *Walsh v. Fusion Japanese Steakhouse, Inc.*, 548 F. Supp.3d 513, 527-31 (W.D. Pa. 2021) (holding a defendant's FLSA violations were willful based on multiple prior investigations by the Department of Labor and a promise to pay non-exempt workers properly in the future).

The Complaint contains no indication that Eagleville knowingly, recklessly, or indifferently failed to pay Orseno for overtime work. For example, there are no facts alleged that Eagleville possessed firsthand knowledge of FLSA requirements and sanctions from previous complaints or investigation by authorities. *See, e.g.*, *Jackson v. Art of Life, Inc.*, 836 F. Supp.2d 226, 237-38 (E.D. Pa. 2011) (finding reckless disregard where owner of defendant company had been "investigated several times by the Department of Labor with respect to alleged overtime violations, been instructed on basic overtime requirements and advised to keep separate track of payroll entries, overtime, and hours worked, and owner was purposefully deceptive in attempting to explain employees' earning statements to court."); *Fusion Japanese*, 548 F. Supp.3d at 528-29 (discussing the Department of Labor investigations of defendant employer). The Complaint also fails to support that Orseno's supervisors or other relevant Eagleville personnel personally knew of the problems. *See, e.g.*, *Fusion Japanese*, 548 F. Supp.3d at 519-20, 528-29 (finding that defendant-employers' failure to properly pay overtime was willful in light of their personal involvement in prior Department of Labor investigations and subsequent remedial measures for prior overtime violations); *Solis*, 934 F. Supp.2d at 810-11 (finding willfulness where defendant-employer instructed employees to lie to Department of Labor investigators and falsify timesheets). Nor does Orseno offer sufficient facts to support that Eagleville was aware of *potential* problems and failed to change course. *See e.g.*, *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296 (3d. Cir. 1991) (finding reckless disregard where defendant gasoline distributor had instituted a commission system for employees, told others that this system was legally walking a "fine line," and had "adopted [a] commission system because overhead was too high on paying the hourly rate, despite concerns as to its legality."); *Solis*, 934 F. Supp.2d at 810 (holding that defendant-employer acted willfully for instructing employees to make false representations to

7

government investigators.); *Hanscom v. Carteret Mort. Corp.*, 2008 WL 4846832 at *3-5 (M.D. Pa. Nov. 5, 2008) (finding no willfulness where defendant's failure to act was based on advice of counsel, guidance from government officials, and standard industry practices).

Considering these cases, Orseno's Complaint contains insufficient information to support a plausible preliminary finding of Eagleville's willfulness.

Therefore, viewed in the light most favorable to Orseno, Eagleville's Motion to Dismiss is granted in part and denied in part. Orseno's claim under the PMWA shall be dismissed without prejudice in so far as it exceeds three years of recovery. Orseno's claim under the FLSA shall be dismissed without prejudice in so far as it exceeds two years of recovery. Orseno's allegation that Eagleville acted willfully under 29 U.S.C. §255(a) is dismissed without prejudice.

### B. Claim IV: FMLA Retaliation

Defendant further argues that Orseno has failed to provide factual allegations to sufficiently plead a retaliation claim under the FMLA. Orseno alleges that within weeks of his application for FMLA leave, he was replaced as the *de facto* head of Eagleville's IT Department by James Flood. From the start of his tenure, Flood allegedly questioned Orseno's use of intermittent leave and demanded three days' notice any time Orseno intended to use FMLA leave for medical appointments, a requirement absent from Eagleville's written policies and employee handbooks. Orseno argues that such treatment qualifies as retaliation under the FMLA.

To succeed on an FMLA retaliation claim, a plaintiff must show that: (1) he invoked his rights to FMLA-qualifying leave; (2) he suffered an adverse employment decision; and, (3) the adverse action was causally related to his invocation of rights. *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d. Cir. 2014). An adverse employment decision is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.

*Cardenas v. Massey*, 269 F.3d 251, 263 (3d. Cir. 2001) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 1997) (abrogated on other grounds)); *Fleck v. Wilmac Corp.*, 2012 WL 1033472, at *14 (E.D. Pa. Mar. 27, 2012). To show causation, plaintiffs must show either "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory activity; (2) a pattern of antagonism coupled with timing to establish a causal link." *Budhun v. Reading Hosp. and Medical Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Here, Orseno has not offered sufficient information to support an inference that Eagleville and its staff retaliated against him for protected leave-taking. Taking each element in turn, the parties do not dispute that Orseno invoked his rights to FMLA-qualifying leave and that such leave was granted.

Turning to the second element, an adverse employment decision, Orseno's Complaint alleges that he was the *de facto* head of the IT Department from February 2024 to late-June 2024. "Sometime" during this span, Orseno applied for a promotion to formalize his role as department head. Soon after Orseno invoked his rights under the FMLA, (*i.e.* in "late June"), James Flood was hired to head the IT Department, tacitly rejecting Orseno's application. Orseno was passed over for a job he was already doing, but only after he applied for leave under the FMLA. He also alleges that Flood "micromanaged" his work, questioned his use of FMLA leave, and instituted a new, unwritten, three-days' notice requirement on Orseno's use of FMLA leave.

As pleaded, these allegations do not support a reasonable inference that Orseno suffered an adverse employment action. Examining the Complaint for a "serious and tangible" change to Orseno's employment "compensation, terms, conditions, or privileges of employment, depriv[ation] . . . of employment opportunities, or adversely affect[] [on] his . . . status as an

employee" does not yield qualifying events.  *Siko v. Kassab*, 2000 WL 307247 at *6 (E.D. Pa. Mar. 24, 2000) (unreported); *see also Cardenas v. Massey*, 269 F.3d at 263.  The adverse employment action *par excellence* is termination.  *See*, *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir.2009) (holding that firing an employee after they file for FMLA-leave can constitute an adverse employment action); *see also Budhun v. Reading Hosp. and Medical Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (holding that both formal and constructive termination can constitute adverse employment actions for FMLA retaliation).  However, Orseno was not terminated but voluntarily resigned in October 2024.

  The failure to promote Orseno to IT head does not, alone, constitute an adverse employment action.  *See, e.g.*, *Clark v. Philadelphia Housing Auth.* 701 Fed. Appx. 113, 116 (3d Cir. 2017) (unreported) (considering failure to promote within the analysis of an argued "pattern of antagonism," not as a self-standing adverse employment action); *Warrick v. New Jersey Office of Attorney General*, 2022 WL 1763855 at *6 (May 31, 2022) (unreported) (holding that written warnings, failure to promote, and eventual transfer to different department, *together*, can constitute an adverse employment action).

  Examining the failure to promote alongside other alleged mistreatment still fails to sufficiently support an adverse employment action.  Assuming, *arguendo*, that Flood's hiring changed the contours of Orseno's own duties, the Complaint does not offer sufficient information to infer that such changes constituted an adverse employment action.  It is not clear that Eagleville replaced Orseno with Flood, or if Flood occupied a different position entirely.  *See, e.g.*, *Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245 (3d Cir. 2014) (holding that plaintiff-employee had suffered an adverse employment action when defendant had replaced her with another employee).  It is similarly unclear if Orseno's own job portfolio was reduced, either

10

in scope or prestige. *See, e.g.*, *Caver v. Cty. of Trenton*, 420 F.3d 253, 256 (3d Cir. 2005) (holding that transfer to light duty with less prestige is considered an adverse employment action); *Weston v. Pennsylvania*, 251 F.3d 420, 430-31 (3d Cir. 2001) (overruled in part on other grounds) (holding that an adverse employment action can include suspension without pay, change of work schedule, or reassignment); *Garner v. Philadelphia Housing Auth.*, 2016 WL 4430639 at *11 (Aug. 22 2016) (finding that jury could reasonably conclude that a transfer from fieldwork to desk duty, and a post-transfer ineligibility for overtime pay was an adverse employment action).

Flood's alleged treatment of Orseno also does not suffice to infer an adverse employment action. Orseno alleges that after applying for FMLA leave, he faced increased scrutiny, micromanagement, workplace hostility, and invasive demands. More specific, Flood allegedly "questioned Plaintiff's use of leave [and] demanded three days' notice for medical appointments," despite the latter's absence in written policies. Orseno has failed to allege how these actions seriously or tangibly affected his compensation, terms, conditions, or privileges of employment. *See*, *Cardenas* 269 F.3d at 263. Other courts have found that increased paperwork or supervision are not sufficient to constitute an adverse employment action in FMLA retaliation claims. *See, e.g.*, *Sconfienza v. Verizon Pennsylvania, Inc.*, 307 Fed. App'x 619, 624 (3d Cir. 2008) (unreported) (holding that a requirement to fill out new paperwork is not a retaliatory action, but "more appropriately analyzed as an interference with . . . FMLA rights."); *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp.3d 214, 235 (D. N.J. 2015) (finding that closely tracking an employee's attendance "hardly constitutes an adverse employment decision" under the FMLA). While not binding, their reasoning is persuasive: paperwork and supervision are normal parts of a hierarchical workplace. *Id.* Such requirements might be unwelcome, particularly while a

11

worker is navigating medical leave, "not everything that makes an employee unhappy qualifies as an adverse employment action, for otherwise even trivial employment actions would form the basis" for retaliation suits. *Fitzgerald*, 92 F. Supp.3d at 241 (citing *Cortes v. Univ. of Medicine and Dentistry of New Jersey*, 391 F. Supp.2d 298, 312 (D.N.J. 2005) (internal quotations, citations, and amendments omitted). Retaliation claims based on new procedural requirements or supervision must therefore show a level of intrusion sufficient to tangibly or seriously affect an employee's "compensation, terms, conditions or privileges of employment." *Fitzgerald*, 92 F. Supp.3d at 235. By simply raising the existence of the new notice requirement, micromanagement, scrutiny, and hostility, Orseno has not demonstrated a level of intrusion sufficient to infer an adverse employment action. In sum, Orseno's Complaint fails to provide enough information to infer that he suffered an adverse employment action as required by *Gilhuly*. 755 F.3d at 193.[2]

For the reasons set forth above, Eagleville's Motion to Dismiss shall be granted on this claim.

An appropriate order follows.

                                           **BY THE COURT:**

                                           **S/ WENDY BEETLESTONE**

                                           **WENDY BEETLESTONE, C.J.**

---

[2] Because Orseno fails to sufficiently allege the second element, there is no need to analyze the third element, causation.